Stephen D. ZOOK, Plaintiff-Appellant,

v.

Joseph T. BROWN, William V. Mosher & Champaign County, Defendants-Appellees.

No. 83-2908.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1984.

Decided Nov. 14, 1984.

Edward H. Rawles, Reno, O'Byrne & Kepley, Champaign, Ill., for plaintiff-appellant.

Steven M. Helm, Dukes, O'Rouke, Stewart, Martin & Helm, Danville, Ill., for defendants-appellees.

Before BAUER and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.[*]

ESCHBACH, Circuit Judge.

Stephen Zook, a deputy sheriff employed by the Sheriff's Department in Champaign County, Illinois, brought this action under 42 U.S.C. § 1983 alleging that he was disciplined in retaliation for the exercise of his rights under the First and Fourteenth Amendments. Zook sought damages from Sheriff Joseph Brown, Chief Deputy William Mosher, and Champaign County. In addition, Zook sought injunctive and declar-

[*] The Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

atory relief. Specifically, he wanted a declaration that the Sheriff's Department rules under which he was disciplined were unconstitutional on their face and as applied to him, an injunction against their further enforcement, and the removal of a written reprimand from his record. The district court granted summary judgment for defendants, holding that the rules were constitutional both on their face and as applied, and that the individual defendants were in any event entitled to qualified immunity from damages. 575 F.Supp. 72.

We agree that the individual defendants are entitled to qualified immunity, and we also agree that one of the rules, which prohibits officers from making public statements when acting as representatives of the Sheriff's Department, is facially valid. We hold, however, that material questions of fact remain that preclude judgment for the defendants as a matter of law on the question of the constitutionality of the rules as applied to Zook and that the record is insufficiently developed to allow a determination that the remaining rule is constitutional on its face. We therefore remand the case to the district court for further consideration.

## I.

In October 1981, there was a public debate in Champaign County over the provision of emergency medical services. On November 9, 1981, a local newspaper published a letter from Stephen Zook, a deputy sheriff employed by the Champaign County Sheriff's Department. In the letter, Zook stated that in his ten years of service as a deputy sheriff, he had had the opportunity to observe the owner of Arrow Ambulance Service and many of the attendants at work and that he was impressed with their professionalism and equipment as well as their dedication in working with patients. Zook ended the letter by commending the owner and employees of Arrow Ambulance Service for their service to the community.

Sheriff Joseph Brown read the letter when it appeared, and immediately noted his belief that the letter conflicted with departmental policy as well as with his own campaign to reduce Arrow's rates.[1] Brown discussed the letter with Chief Deputy William Mosher, who agreed that the letter violated departmental policy. On November 16, Zook received an Official Letter of Reprimand composed by Mosher and signed by Brown. The reprimand stated that Zook's letter placed the Sheriff's Department in an "uncomfortable position" and that it was necessary for the members of the Department to remain neutral and impartial in relation to the provision of emergency services because the services are generally competitive and because people tend to suspect collusion between the police and emergency service providers. The reprimand stated that Zook was in violation of Standards 2.19 and 4.4 of the Champaign County Sheriff's Department Operating Procedures Manual. Standard 2.19, entitled "Abuse of Position," states in relevant part:

> B. Use of Name, Photograph or Title: Officers shall not authorize the use of their names, photographs, or official titles which identify them as officers, in connection with testimonials or advertisements of any commodity or commercial enterprise, without the written approval of the sheriff.

Standard 4.4, entitled "Public Statements and Appearances," states in relevant part:

> B. When acting as representatives of the department, officers shall receive approval from the sheriff before they address public gatherings, appear on radio or television, prepare any articles for publication, act as correspondents to a newspaper or periodical release, or divulge investigative information or any other matters of the department.

---

1. The Sheriff's disagreement with the rates charged by Arrow, and his lobbying efforts to get the rates reduced, were not known to the general public or members of the Sheriff's Department.

Upon receipt of the reprimand, Zook wrote Brown and expressed his belief that his letter was not a testimonial or advertisement in violation of Standard 2.19, and that he was not acting as a representative of the Department in violation of Standard 4.4. Zook also stated his belief that his letter was constitutionally-protected speech and that the Sheriff's action violated his constitutional rights. Zook asked that the reprimand be expunged from his record. Brown consulted Trisha Crowley, an Assistant State's Attorney for Champaign County, in regard to Zook's claim that the reprimand violated his constitutional rights. After researching the matter, Ms. Crowley told Brown and Mosher that she could not predict with any certainty how a federal court would rule on the question of whether the reprimand was impermissible and told them that their chances of winning a lawsuit challenging their conduct were "fifty-fifty." Brown and Mosher decided not to expunge the reprimand.

Thereafter, Zook filed the instant action under 42 U.S.C. § 1983, naming Brown, Mosher, and Champaign County as defendants and alleging that Standards 2.19 and 4.4 were overbroad, vague, and unconstitutional as applied to Zook.[2] Zook sought compensatory and punitive damages, as well as injunctive and declaratory relief. The individual defendants interposed the defense of qualified immunity and moved for partial summary judgment; the plaintiff also moved for summary judgment.

The district court held that the defendants had not violated Zook's rights under the First and Fourteenth Amendments. The court found that the Standards furthered the Sheriff's Department's legitimate goal of avoiding the appearance of partiality in its relations with emergency service providers, and that "an otherwise innocent act, such as praising a particular service's actions, could be perceived by the

public as an endorsement." It thus found that the Department's interest in "limiting deputies' opportunities to contribute to the public debate on ambulance services" justified the regulations and that the regulations were constitutionally applied to Zook. Having found that the regulations were constitutional as applied, the court held that Zook lacked standing to challenge the regulations as overbroad or vague. Finally, although it recognized that it need not reach the issue, the court held that the defendants were entitled to qualified immunity for their actions. In doing so, the court relied primarily on the fact that the defendants had sought a legal evaluation of their conduct from the Assistant State's Attorney and had been informed that the law was unclear. The court therefore found that the defendants had met the burden of demonstrating that they neither knew nor should have known that their conduct was in violation of clearly established constitutional rights. Summary judgment was then entered for the defendants.[3]

## II.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), held that a government official is entitled to immunity from liability for damages if the official's actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." The test is an objective one that focuses on the state of the law at the time of the alleged violation. In the context of this case, then, we must ask whether the defendants could reasonably have been expected to know at the time they disciplined Zook that the Constitution forbade their actions. *See Egger v. Phillips*, 710 F.2d 292, 315 (7th Cir.1983).

▇ Zook argues that the right of a public employee to comment on matters of

---

2. Zook also challenged a third rule prohibiting certain political activity. The rule has since been amended and the parties agree that the claim as to this rule is moot.

3. We note that while the individual defendants moved only for partial summary judgment on the issue of qualified immunity, the district court granted summary judgment on all issues and for all defendants.

public concern was clearly established as early as 1968 in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). We agree that such a right exists, but the existence of that right does not end our analysis under *Harlow*, for a public employee's right to comment on matters of public concern must be weighed against the public employer's legitimate interest in "promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. The process of balancing the competing interests of public employers and their employees under *Pickering* necessitates an assessment of the relative weight of a wide range of factors. As this court noted in *Egger, supra*,

> ▮n view of the enormous variety of circumstances in which statements by public employees may be thought by their superiors to furnish the grounds for personnel action, the Supreme Court has deemed it inappropriate and infeasible "to attempt to lay down a general standard against which all such statements may be judged."

710 F.2d at 315 (quoting *Pickering*, 391 U.S. at 569, 88 S.Ct. at 1735).

▮ Although analysis of competing interests under *Pickering* involves a balancing process, it does not follow that the outcome that a court would reach would always be difficult to predict. We know, for example, that a public employer cannot entirely deny its employees the right to criticize their employer. *See Pickering*, 391 U.S. at 568, 570, 88 S.Ct. at 1735 (teachers); *Muller v. Conlisk*, 429 F.2d 901, 914 (7th Cir.1970) (same; policemen). We can also imagine a situation where the employer's asserted interest in limiting the speech of its employee is so frivolous that it should have been clear to the employer that its attempts to punish the employee for his speech were unconstitutional. This, however, is not such a case.

**4.** Zook premises the County's liability on *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), alleging

▮ The Sheriff testified that there have been several instances within the state of which he was aware where police departments had been involved in scandals involving kick-backs from emergency care providers. He also testified that the public generally suspects collusion between such service providers and police departments. The Department is often in the position of having to call service providers, such as towing and ambulance services, in response to situations encountered by officers during the course of their duties.

It cannot be maintained that the Department's concern with appearing to treat all such services alike is an illegitimate goal. We cannot say that the plaintiff's letter, which identifies him as a deputy of the Champaign County Sheriff's Department and praises a particular ambulance service, does not implicate this concern. Nor can we find clearly established law from which Brown and Mosher should have gleaned that Zook's interest in commenting on the ambulance service clearly outweighed their concern with maintaining public confidence in the impartiality of the Department. Accordingly, we agree with the district court that the defendants Brown and Mosher are entitled to qualified immunity for their actions.

### III.

A finding that the individual defendants are entitled to qualified immunity does not end the matter, however, because Zook also sought declaratory and injunctive relief, as well as compensatory damages from Champaign County.[4] Specifically, Zook wants a declaration that the rules which he was charged with violating are facially unconstitutional and unconstitutional as applied to him, and an injunction against their future enforcement. In addition, Zook wants the letter of reprimand expunged from his record.

that the rules were approved by the County and represent official policy.

### A.

Before we attempt any analysis of the substantive issues, we must first address the procedural posture of the case on appeal.

 Both the plaintiff and the defendants moved for summary judgment below. The requirements for granting summary judgment are well-established: there must be no "genuine issue as to any material fact" and a party must be entitled to judgment "as a matter of law." Fed.R.Civ.P. 56(c). While the plaintiff moved for summary judgment below, "[t]he contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Schwabenbauer v. Board of Education*, 667 F.2d 305, 313 (2d Cir.1981). We agree with the plaintiff that the record was insufficiently developed to allow entry of judgment as a matter of law for the defendants on the substantive issues remaining in the case.

The defendants moved for summary judgment only on the question of immunity, which, as we have noted, now involves solely an examination of the state of the relevant law. *See* Part II, *supra; see also Bates v. Jean*, 745 F.2d 1146, 1151 (7th Cir.1984). In the context of that motion, they did not attempt to establish the absence of disputed facts relevant to other issues in the case.

As we noted earlier, analysis of government employees' claims that they have suffered retaliation for engaging in constitutionally-protected speech involves a consideration of a myriad of factors aimed at defining the context in which the expression occurred and the precise nature of the competing governmental concerns. In its most recent discussion of public employee speech, the Supreme Court discussed several of these factors, including (1) whether the employee expressions under consideration impeded his ability to perform his duties, (2) the degree to which the employ-

ee's expression involved matters of public concern and the gravity of that concern, (3) the time, place, and manner of the expressions, and (4) the employee's motives in voicing the expressions at issue. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Our review of the record convinces us that several factual areas critical to an analysis under *Pickering* and its progeny are insufficiently developed to allow judgment for defendants as a matter of law on all issues remaining in the case.

First, *Connick* makes clear that a threshold consideration in any such analysis is the degree to which the public employee's expressions can be said to involve matters of public concern. Thus, it becomes important in the context of this case to define the actual scope of the public debate in which Zook claims to have participated. The district court found that there was a public debate in Champaign County over the provision of emergency services, but found that the Sheriff's Department's legitimate concern in maintaining an image of impartiality towards such services outweighed any interest the plaintiff might have in commenting on a *particular* ambulance service. At oral argument in this court, however, counsel for defendants conceded that, in fact, Arrow Ambulance Service was the subject of the debate. If this is the case, we believe that it is relevant to the weight to be given Zook's claim that he was commenting on a matter of public concern.

Further, the defendants concede that Zook's letter did not impair his efficiency as an employee or cause any unrest or disruption in the Department. They maintain that their only interest in limiting Zook's public comments on emergency care providers was to avoid the image of partiality in their relations with the various providers of such services. Sheriff Brown explained in deposition testimony that it is often the case that the public comes to believe that the police are in collusion with a certain service and that officers will call one service over another for improper rea-

sons. At oral argument, the parties could not agree about the number of ambulance services in the County. Zook's counsel maintained that Arrow was the only such service in Champaign. Defendants' counsel argued that there are other services in other communities in the County. If these services are in competition, then the defendants' concern with appearing to favor none of them is evident. If, however, there are no other services, or if the other services are so remotely located in the County that they do not compete with Arrow, then the defendants' articulated interest in limiting Zook's expressions is entitled to less weight.

Finally, no consideration of the time, place, and manner of Zook's expressions of opinion is found in the district court's opinion. Such considerations may well be relevant to a determination of whether, as the defendants argue, Zook could properly be considered to be acting as a representative of the Sheriff's Department in his letter, rather than merely expressing his own opinions as a private citizen. Brown and Mosher both stated in deposition testimony that they believe that a deputy acts as a department representative whenever he mentions publicly that he is employed by the Department as a deputy. Under their view, a deputy must seek advance approval of any public statement in which he is so identified or suffer sanction under Standard 4.4. We believe that such an interpretation, in the abstract, would impermissibly limit the rights of Department employees: the Department cannot maintain that it has an overriding interest in every conceivable public statement a deputy might make, no matter what the context or content of the statement, simply because the deputy identifies his office.

The district court need not accept this interpretation of Standard 4.4, however, for the proper question in the context of this case is whether Zook's public comments could reasonably be viewed as representing the opinion of the Department. We believe that whether Zook was "acting as a representative of the department" is a disputed question of fact.

For the foregoing reasons, we must remand Zook's claims that the rules were unconstitutionally applied to him for further development of the record.

### B.

■ Zook also challenges the facial validity of the regulations. Ordinarily, when a litigant challenges both the facial validity of a rule and its application to him, those arguments directed at the facial validity of the rule should be considered first, see *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 41 L.Ed.2d 362 (1982); *Ross v. Reed*, 719 F.2d 689, 693 (4th Cir. 1983), and disputed factual matters, such as those we have identified here, will not ordinarily bar a determination on the merits through summary judgment. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 635–36, 100 S.Ct. 826, 835, 63 L.Ed.2d 73 (1980). We, however, have deferred discussion of Zook's facial challenges to the rules for reasons we will outline below.

■ First, we do not believe that Standard 4.4, prohibiting officers from making public statements when acting as departmental representatives, is directed at expressions of opinions by officers in their capacities as private citizens, and therefore we must reject Zook's claim that it is impermissibly overbroad.[5] We also reject Zook's argument that the rule is vague. While there remains a dispute as to whether Zook was acting as a representative of the Department within the meaning of the rule in this case, we do not believe that the language is so vague that "men of ordinary intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed.2d 322 (1926); *see Broad-*

---

**5.** Because Standard 4.4 is, on its face, only concerned with speech in which employees purport to represent the views of the Department, we reject Zook's argument that the rule contains an impermissible prior restraint.

*rick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973).

Zook's complaint about Standard 2.19 is that it incorporates a prior restraint upon speech. The rule purports to allow officers to appear in advertisements or make testimonials, but only with the prior approval of the Sheriff. Zook argues that the rule allows the Sheriff to function as a prepublication censor and to make *ad hoc* standardless determinations about which forms of expression he will allow. It is axiomatic that "[a]ny system of prior restraints comes to [a court] bearing a heavy presumption against its constitutional validity." *New York Times v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971) (per curiam); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *Bantam Books v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). We are loathe, however, to attempt any extensive analysis of Standard 2.19 on the record now before us. As we noted earlier, defendants moved for summary judgment only on the question of immunity. They have not articulated the concerns underlying the rule in question beyond stating their concern with maintaining an appearance of impartiality with respect to emergency care providers. The prohibitions of the rule obviously extend beyond the limited situation before this court in this case. However, we are mindful of the Supreme Court's admonition that we must give full and careful consideration to the "government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1692, 75 L.Ed.2d 708 (1983). We therefore remand Zook's claim that Standard 2.19 is facially invalid to allow further development of the record with respect to the governmental interests implicated by the rule.

## IV.

For the reasons expressed in the opinion, we affirm the district court's determination that the individual defendants are entitled to qualified immunity from damages. We also affirm the district court's determination that Standard 4.4 is facially valid. We remand Zook's claims for compensatory damages from the County, and for declaratory and injunctive relief, including removal of the reprimand from his record, for further proceedings to determine whether Standard 2.19 is facially valid, and whether the rules were constitutionally applied. Circuit Rule 18 shall apply. Each side to bear its own costs on appeal.